May it please the Court, my name is Wayne Young. I represent the habeas petitioner Acosta. This is the shackling case. Mr. Acosta was shackled to his chair during his trial. Now it is clearly established that such restraints, whether visible to the jury or not, are prohibited unless required by a specific security interest peculiar to that defendant. And it's undisputed that there was no showing of such a need in this case. So it's clear that the trial court erred. Everybody agreed, the Court of Appeal and the magistrate, in permitting Mr. Acosta to be restrained. So the issue becomes an issue of prejudice and an issue of whether they were visible. Now on that issue of whether they were visible, I think the wrinkle here is that it is the court that has the duty to determine whether or not they were visible. Because of the inherently prejudicial nature of shackles, that DSP Poole case from this circuit held that the burden is on the trial court. Wait a minute. What difference does that make? The difference it makes is it was unreasonable. No. What difference does it make what we've said? Because the question is what the U.S. Supreme Court law has clearly established, isn't it? Well, it is. And what the Supreme Court has clearly established is that shackling is inherently prejudicial. Where? I'm sorry? Where? In Holbrook. It's established that visible shackling in a capital sentencing procedure is inherently prejudicial. I believe it is held that shackling, visible shackling, I agree with the Court about that. All right. Not necessarily only in a sentence, in a sentencing, but a trial is inherently prejudicial. All right. So the point becomes whose duty is it to determine whether or not those shackles are visible to the jury? Defense counsel here made his objection. The court just basically the bailiff made the decision with some review by the court. Without any inquiry, were those shackles visible? The court said that they weren't. But then you have a defendant, you know, sitting throughout his trial, not able to stand up when the jury walks in or exits, apparently shackled, although there's some dispute, to his chair when he testified. And so the burden was on the court to make the inquiry. So the court says, I see what kind of shackles it is. They're not visible to the jury. We'll take steps to make sure the jury doesn't see them. He'll be sitting when the jury comes in, blah, blah, blah. That's what the court decides and says. And you say, he doesn't have any obligation to say, oh, no, judge, they can see it. He just sits back and then you come later on in federal habeas and say, well, you know, we didn't have to develop any record in the court. We didn't have to put on any affidavits. We didn't have to do anything in the state system because it's their burden. I don't quite understand that argument. That just doesn't seem to square with anything else in the law. Well, I think it squares with the idea of trial error versus structural error. This is not just an evidence, an objection to an admission. Let's say it ain't structural error for the moment. If it's structural error, who cares who has the evidence? Let's say it's not structural error. Having made his objection. He makes his objection. The court says, yep, it looks good to me. There's no problem. He doesn't really say it's visible to the jury. The court says, I don't see any problem there. Well, again, because of the inherently prejudicial nature, our position is that the burden was on the trial court to do something more than to just take a look from the bench and say, oh, they're not visible. That's fine. But it still leaves the question, if what the trial judge is saying in the courtroom isn't true, wouldn't you expect defense counsel to say, well, that's not true, judge. He can see them. Well, it certainly would have created a better record, but as an absolute requirement, is the burden on counsel to do any more than to object to his client being shackled when it's something that has to do with courtroom? If that's the only burden that there is, then it is structural and nobody cares about prejudice. That's the end of it. The problem is that we do care about prejudice, and isn't the question whether the Petitioner exercised due diligence in developing a record in the State system that he was prejudiced by? And he had the opportunity in this case. I mean, in this case, there's no question, because he, in fact, held an evidentiary hearing on forgotten, but some kind of juror misconduct issues. So the jurors are right there. I mean, he could have said at that point, did any of you see me shackled? I presumably didn't do that, because he knew they didn't. But, you know, I mean, there is no record. He unquestionably had the opportunity in that subsequent hearing to do it, and he didn't do it. So the question returns to, is that objection sufficient when it has something to do with the manner in which the courtroom is being run as opposed to the admission of evidence in a case? And I think there's overlap between the structural issue and the prejudicial issue. But it's an unreasonable finding, I believe, you know, having been in district courts, that the jury was unaware of it. The first thing that you're aware of as a trial counsel is the jury watches everything. And to think that a jury is unaware that a defendant is shackled, when he's not able to stand up, you know, his movements are restricted, you know, to a certain extent Was such an affidavit put before the State court system? It was not, Your Honor. So this obvious thing to all lawyers is never even put to the State courts on post-conviction review? No. Direct appeal was the only thing that he did, and then he went to the Federal court. Now, I don't believe that the requirement to develop the evidentiary record precludes you from going directly after a direct appeal to the Federal court. I don't think there's a burden to first go by way of State habeas. So the question becomes the failure to develop it in the post-verdict hearing. So this thing is obvious to every trial lawyer almost in the world, although it's not maybe quite so obvious to every trial judge in the world. It's so obvious it's never even put before the State court. Judge, it's perfectly obvious this is true. And here are the affidavits from our defense experts. Well, I mean, we've identified the precise issue in this case, Your Honor. But again, I guess it comes back to that structural issue. But the counsel made his objection. It certainly would have been better to be standing here had he developed it further. But having brought it to the attention of the court, our position is that the burden shifts to the trial court and perhaps to the prosecution as well at that stage in the proceedings for them to make the inquiry whether or not it's visible. If not, then basically non-visible or, you know, basically we have new technology now. The stun gun is an example. Then shackling is going to be permitted at any time, even though it is clearly established that certainly visible shackles are inherently prejudicial. That's the difference. If the problem is visibility and technology permits invisibility, you can't say the established case law prohibits invisible shackles because the established case law is concerned with what the jury can see and the inferences the jurors will draw from that. I think the factors that led to the decision in the cases in which they're visible apply as well to this case. And that is sort of the shaming of being shackled. The Supreme Court in DEC, I believe, addressed the impact on the defendant of being shackled in front of the jury. The mental impact is similar for someone, whether it's visible to the jury or not. He knows he's sitting in the courtroom, and that presumption of innocence, which is at the core of all these cases, is taken away to him. You know, he's thinking, what do I do to prevent myself from being, from the jury determining that I'm shackled? It becomes a factor. So some of the same factors that go to visibility apply to cases in which it's not visible. And given that, again, the duty goes to the trial court to make sure that they're not visible. Thank you. Okay. We'll hear from Mr. Hill. Good morning, Your Honors. Deputy Attorney General Noah Hill on behalf of Respondent. May it please the Court. The district court properly determined that the state court had reasonably rejected Petitioner's shackling claim in this case. DEC did indeed hold that it is visible shackles and not non-visible shackles that violate a defendant's constitutional rights. And in this case, the trial court on two occasions determined that this was a non-visible restraint device, this waist belt that attached to the back of the chair. The bailiff made the same observation. The trial court invited comment from defense counsel, and defense counsel did object, did object on the basis solely of the manifest need or lack thereof for the restraint device, but said nothing, of course, about the visibility and, as Judge Reimer pointed out, had the opportunity to do that in a post-conviction proceeding regarding juror misconduct. And, of course, the question which Petitioner suggests, which is that even if it's true they're not visible, the effect on the defendant's behavior in the courtroom, in particular his inability to stand when everybody else stands, is something that he thinks or alleges the jurors would notice. And, indeed, there are certain customs in the courtroom the jurors may or may not be familiar with. What's your comment as to that? Well, one, that's not the visibility of shackling. That might be an awareness, and it's a similar argument, of custody. But in this case, the ---- I mean, just to develop that, if everybody stands up except defendant or defendant in defense counsel, jurors may think, oh, these guys are dissonant because they're not willing to stand up when everybody else is. And the record doesn't establish that that, in fact, happened. We do know from the record that the trial court did not ask the attorneys to stand during voir dire. The trial court did have Petitioner stand to be sworn in at the witness stand. So he was not restrained during his own testimony. In addition, the evidentiary portion of this trial lasted a single day. So this wasn't a situation where you had days or weeks of testimony and the jury seeing Petitioner time and again not standing when everyone else was. This was a very short trial, and there's nothing to suggest that any of the jurors had that awareness concerning that fact. It used to be in the very old days in the state trial court system, lawyers would even sit during argument and during questioning and making objections and everything. I mean, some trial courts, they'd just sit the whole time. That's true. Everybody sat the whole time. Is that still true? It is still true in state court, Your Honor, in state trial courts. We get used to federal court where everybody has to get up whenever they say or do anything, but I have some recollection of the lawyers lounging in the chairs, asking their questions and making their objections and not even getting up at all. I don't know that lounging is the word that I would use, Your Honor. Well, we'll have Barker loungers behind each table. I've seen some lounging, but that's not. Yes, federal judges are far more strict about standing at the podium when making your arguments and standing when making objections. And to the last point concerning the mental effect, this isn't a stun device. This is a waist belt. His arms and legs could move. He could turn in his chair. This isn't something that he would have a particular negative feeling about or interfere with his ability to communicate with counsel. It certainly didn't interfere with his ability to testify on his own behalf. And for those reasons, we would ask this Court to affirm the district court judgment if this Court has any questions. I don't think so. Thank you. Mr. Hill? Mr. Young? We'll submit it, Your Honor. Okay. Thank you for your argument. The matter just argued will be submitted.
judges: Fernandez, Rymer, Clifton